IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

AVEN H. COTTON, #177306,       :

    Plaintiff,             :

vs.                     :   CIVIL ACTION NO. 16-00492-KD-B

MICHAEL ONDERDONK, *et al.*,   :

    Defendants.           :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se*, commenced this action by filing a Complaint under 42 U.S.C. § 1983 and paying the $400 filing fee. (Docs. 1, 2). This action is now before the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). Upon careful review of the Complaint, and Plaintiff's Amended Complaint (Docs. 1, 5), it is recommended that this action be dismissed without prejudice for lack of standing, or in the alternative, the Heck-barred claims be dismissed with prejudice as frivolous pursuant to 28 U.S.C. § 1915A(b)(1) and the remainder of the claims be dismissed without prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A(b)(1).

I.  **Nature of Proceedings.**

   A.  **Complaint.   (Doc. 1).**

   Plaintiff filed his Complaint on the Court's § 1983 complaint form and listed Defendants in the style of the action, not in Section III as the form directs.   (Doc. 1 at 1, 4-5). Plaintiff names as Defendants, County Attorney and Assistant District Attorney Michael Onderdonk; District Attorney Robert Keahey, Sr.; Judge Richmond Pearson; Judge Hardie Kimbrough; Washington County Circuit Clerk Steven Grimes; Special Judge Thomas Norton; Notary Eunice Johnston; Judge Harold L. Crow; District Attorney Spencer Walker; Judge Robert Montgomery; Attorney Jerry Turner; and Judge Gaines McCorquodale.   (Id. at 1, 9).[1]   Plaintiff indicates that his claims against the

---

[1]   Considering that this action concerns allegations against individual Defendants who are involved with Alabama's legal system as well as claims regarding Plaintiff's convictions and sentences, it bears noting Plaintiff's litigation history with this Court. Plaintiff previously filed four unsuccessful habeas actions in this Court, namely, Cotton v. Jones, CA No. 96-00683-BH-S (S.D. Ala. 1997) (unexhausted); Cotton v. Jones, CA No. 99-00374-CB-D (S.D. Ala. 2002) (procedural default or without merit - indicating that Plaintiff received three, thirty-year concurrent terms for three counts of first-degree sexual assault involving a female juvenile, and two, twenty-year concurrent terms for two counts of first-degree sexual assault involving a male juvenile, totaling fifty years - Doc. 51 at 2); Cotton v. DeLoach, CA No. 06-00042-CB-M (successive); Cotton v. Daniels, CA No. 08-00555-WS-M (S.D. Ala. 2009)

2

Defendants arose in 1987 and are continuing. (Id. at 4). As for his claims against each individual Defendant, Plaintiff again did not follow the form's directives to describe what each Defendant did to violate his rights and to follow that format on any additional pages. Instead, Plaintiff merely attached a narrative. (Id. at 5-6). This forces the Court to attempt to distill Plaintiff's claims from his narrative, which is unorganized and repetitive, and filled with conclusions of law and conclusory and vague allegations.

Plaintiff's form complaint does however contain a brief description alleging that Assistant District Attorney Onderdonk "stole" some land that Onderdonk thought belonged to the estate of Ellis Jordan after Jordan's widow died, but a title search revealed that Plaintiff Aven H. Cotton owned a portion of the land.[2] (Id. at 4). Plaintiff claims that Onderdonk then filed a "civil case" against him, and that such constituted a "misuse of power, conspiracy, forgery, and illegal use of individual power to cover up this theft of property" and a "denial of due process

_____

(successive). Plaintiff also filed a frivolous § 1983 action, Cotton v. Harold Crow, Jerry L. Turner, and Robert D. Keahey, CA No. 96-00676-RV-S (S.D. Ala. 1997). This Court takes judicial notice of its records. ITT Rayonier, Inc. v. United States, 651 F.2d 343, 345 n.2 (5th Cir. July 20, 1981).

[2] Plaintiff states later that the total amount of land stolen was 3,000, which included Plaintiff's land. (Id. at 25).

3

of law." (Id. at 4-5). Plaintiff proceeds to disavow that he
is "attacking the [his] convictions or sentence[s] in this 1983
U.S.C.[;] [but then he states] he is showing this Court, if it
was not for the stolen land, with [the] forged signature, by
Assistant District Attorney[,] [he] would not had even [to]
c[o]me to prison, or now [be] kept [on] illegal or void
sentences [be]cause of [the] pay-off from Onderdonk." (Id. at
6). For relief, Plaintiff requests that criminal charges, where
appropriate, be brought against each Defendant of the judicial
system, who was involved with the theft of property by
[Onderdonk] and his co-conspirators. (Id. at 7). Additionally,
Plaintiff requests the return of his land, or that he be paid
for his land, and any damages the Court deems appropriate,
including damages for misuse of power under state law. (Id.).

The narrative attached to Plaintiff's Complaint is titled,
"Motion for the Court to Recognize Delay in Proceedings in This
Civil Action Caused by the Courts, Judges, District Attorney,
and Prior Probate Judge, and County Attorney Michael Onderdonk
("narrative")." (Id. at 15). To explain the delay in filing
this action, Plaintiff states,

> To the fact the Plaintiff has been trying to
> obtain a copy of the deed (Aven H. Cotton's deed)
> of the property in question since, 1987, when the
> case was not tried on November 18, 1987. [He]
> finally got verification copy of said Quit Claim
> Deed, (Exhibit-A) with the forged signature of

4

> Avin H. Cotton, by County Attorney Michael
> Onderdonk in March, 2016.
>
> The Courts will not allow Aven H. Cotton to
> possess a copy of the deed that . . . transferred
> title to Aven H. Cotton from Ellis Jordan to this
> land.

(Id. at 15-16).  According to Plaintiff, his former attorney, Jerry L. Turner, and Onderdonk did not inform him that the civil case was settled with a Quitclaim Deed, prepared and executed by Onderdonk without Plaintiff's authorization.   (Id. at 16). Plaintiff contends that when Thomas Goggans was representing him on a Rule 32 appeal (appeal No. CA 13-1165), during a visit, Goggans told Plaintiff that the reason he "could not get any justice on [his] illegal sentences, was because [he] owned some land, [and] that they needed a deed to [it.]"   (Id.). Thereupon, Plaintiff hired someone to search the land records in Washington County Probate Office where a copy of the Quitclaim Deed with Plaintiff's "forged" signature was discovered, in addition to a subsequent warranty deed signed by Onderdonk selling the land, which was done instead of going to court. (Id.).  Plaintiff deduces that "Onderdonk, would not had to have a deed in [Plaintiff's] name, if [Plaintiff's] true deed from Mr. Ellis Jordan was not valid." (Id.).

   According to Plaintiff, he received a copy of the Quitclaim

Deed with this forged signature in March, 2016.[3]   Thus, he
contends that he is well within the two-year statute of
limitations for an action under §§ 1983, 1985, and 1986 for a
conspiracy and the denial of justice to keep him in prison on
void sentences.   (Id. at 17).   However, Plaintiff has also
attached a letter to this Court dated December 29, 2014,
wherein, he requests the case number of his prior case in this
Court in 1988 (CA No. 88-910-C). In the letter, Plaintiff states
that he will be filing a "spin-off" of his prior lawsuit because
he is being held on an illegal sentence.   (Id. at 43 (Ex. A-4)).
He also states that in May of that year (2014), he located the
deed with his forged signature.   (Id.).

In an attempt to organize Plaintiff's remaining factual
allegations, the Court will describe them chronologically.

---

[3]   Plaintiff attached a copy of a Quitclaim Deed to
Ernest E. and Linda M. Cotton to his Complaint as Exhibit
A.   (Doc. 1 at 30).   The copy of the Quitclaim Deed does
not contain any writing in the spaces for the date of
execution and the space for the signature of "Aven H.
Cotton" is not legible. (Id.).   Plaintiff contends that
next to his signature are the initials of M.O. (Michael
Onderdonk).   As noted, the writing surrounding the
signature space is not legible.   (Id. & 20).   The second
page of the deed contains only notary information, which
shows December 16, 1988, as the date when the Quitclaim
Deed was notarized. (Id. at 31).

On December 17, 1988, the next day, Onderdonk and
his wife conveyed the same property described in the
Quitclaim Deed to Ernest E. and Linda M. Cotton by a
Statutory Warranty Deed.   (Id. at 39-40(Ex. A-2)).

According to Plaintiff, he and Mr. Ellis Jordan lived at the same residence for years during which time Plaintiff assisted Jordan with his business, as needed. (Id. at 21). Jordan surveyed 26 ½ acres for a home site for Plaintiff and had a deed prepared. (Id.). The deed was "placed . . . in a trust fund deed" because Jordan and his wife, Annie Jordan, were separated and she did not sign the deed. (Id.). Jordan told Plaintiff that he did not want the law firm of Turner, Onderdonk, and Howell handling his estate. (Id. at 22). "This is the reason [Plaintiff] know[s] . . . the land Michael Onderdonk claimed . . . was stolen under false pretense, [and the] reason Onderdonk could not face [him] in a jury trial, that [is] what cause[d] all the conspiracy, misuse of judicial power invested in the judge, district attorneys under color of state law, and all the malicious criminal prosecution." (Id.).

Plaintiff alleges that the civil case of Onderdonk v. Cotton was called for trial in August, 1987, and that Judge Richmond Pearson asked Judge Thomas Norton, Circuit Court Judge from Baldwin County, to serve as a substitute judge. (Id. at 17, 19). However, after Judge Norton called the case, and the jury was selected, and the witnesses were present, Onderdonk's attorney[4] requested that the case be continued to the criminal

---

[4]   Onderdonk's attorney was District Attorney Keahey's

docket on November 18, 1987. (Id.).  On November 18, 1987, Judge
Richmond Pearson called Plaintiff's six misdemeanors for trial.
(Id. at 19).  District Attorney Robert Keahey prosecuted the
cases and told prospective jurors that if it were not for
Plaintiff, a jury would not be needed this week.  (Id. at 19-
20).  On November 18 or 20, 1987, Plaintiff was tried on six
misdemeanors and was found guilty on two D.U.I. charges, for
which he was incarcerated until April 17, 1989.  (Id. at 23-24,
26, 33, 35 (Ex. A-1)).  Plaintiff contends that to allow Keahey
to try six misdemeanors before the judge to whom the civil case
was originally assigned and who put the trial of the
misdemeanors ahead of the civil case is a misuse of power.  (Id.
at 26).  On "May 17 and 18, [1988]," Plaintiff was tried on four
more misdemeanors.  (Id.).[5]  He received county-jail time on each
conviction with "all run wild, for 4 years" which "could be for
one reason [to] cover-up the stolen property of [Plaintiff]."
(Id.).  Plaintiff thus asserts that could not have signed the
Quitclaim Deed in the Probate Office as indicated by Eunice
Johnston, who notarized the deed on December 16, 1988.  (Id. at
23).

    According to Plaintiff, he was sentenced on December 16,

---

father-in-law, Lee B. Williams.  (Doc. 1 at 28).
[5]  Plaintiff attached a listing of eleven offenses from
March 19, 1987 to December 15, 1988 to the Complaint.
(Doc. 1 at 44-45).

1988, on a third-degree assault conviction for causing the
retina detachment of Jailer Laton. (Id. at 20, 32-33 (Ex. A-
1)). Plaintiff contends that when Sheriff William Wheat
initially investigated the incident, he informed Onderdonk and
Keahey that Plaintiff did not cause the retina to detach because
Laton was already scheduled for surgery to repair it. (Id. at
20, 27). He also contends that the hit to the eye was
fabricated as Laton worked the night of the incident without
injury. (Id. at 27). Notwithstanding, Onderdonk secretly
indicted Plaintiff by having Laton go before the grand jury and
commit perjury by saying that Plaintiff hit him in the eye.
(Id. at 26). Plaintiff contends that "Judge Hardie Kimbrough
conspired with District Attorney Keahey and with Onderdonk, to
force a lawyer upon [Plaintiff], [who] [had] never handle[d] a
case in Court, and Judge Kimbrough knew why the charges were
planned and he knew he was misusing his power, to cooperate with
them to gain a conviction, [be]cause he knew of the civil case,
and knew they needed [Plaintiff] in prison really to cover up
the forging of [his] signature, stealing and selling [his]
land." (Id. at 27). Plaintiff was sentenced to one year
county-jail time on December 15, 1988. (Id.). Plaintiff
contends that this is the reason Onderdonk argued against
Plaintiff receiving good time in a state-court habeas

9

proceeding. (Id. at 27, 32 (Ex A-1)).

Plaintiff further contends that on December 16, 1988, Onderdonk forged Plaintiff's signature in order to sell the land, and that Eunice Johnston, the Clerk for the Probate Office and a notary, notarized the Quitclaim Deed for Onderdonk, County Attorney. (Id. at 23). Plaintiff asserts that because he was in jail, there is no way that he could have been in the probate office to sign the Quitclaim Deed, and that Eunice Johnston should be exempt from prosecution "for her honest, and correct testimony" that he was not present and that Onderdonk forged his signature. (Id. at 24). Plaintiff also asserts that if he had in fact signed the Quitclaim Deed, Ms. Wheat at the jail would have notarized the signature for him. (Id. at 23).

According to Plaintiff, Onderdonk represented the Washington County Commission and Sheriff Wheat in CA 88-910-C, an action filed by Plaintiff over the good-time law in an attempt to have good time credited to his county-jail time. (Id. at 21, 34 (Ex. A-1), 43 (Ex. A-4)). Plaintiff contends that the conspiracy did not end there because they were afraid when he finished serving his four years of county-jail time, from his consecutive sentences, that he would find out about the "the deed stealing [his] land by forgery." (Id. at 27). According to Plaintiff, "[t]he true reason came out, [Onderdonk]

was to keep [Plaintiff] in jail to keep his forging [Plaintiff's] signature on the quitclaim deed, cover[ed] up, that [Plaintiff] discovered in March, 2016." (Id. at 21). "District Attorney Robert Keahey and his Assistant District Attorney Michael Onderdonk acted in bad faith, with malicious purposes, and wil[l]ful[] disregard of [Plaintiff's] rights, and safety to steal [Plaintiff's] property, by misuse of power." (Id. at 27).

From Plaintiff's allegations, it appears that he was released from the county jail on April 17, 1989, and began serving two other sentences (totaling twenty-one months of incarceration) in the county jail on February 26, 1990 for negotiating a worthless negotiable instrument and for third-degree assault. (Id. at 36, ¶8 (Ex. A-1); see Doc. 5 at 2).[6] Plaintiff further asserts that in 1995, on the day Candy Schafer's house burned down, the Washington County Sheriff Department and Hobson Fire Department found marijuana at the house, and "County Attorney Onderdonk made a deal with Shafer that he would not bring charges against her and would destroy

---

[6]   Interestingly, Plaintiff does not contend, and his Complaint does not allege that he was incarcerated the entire time from 1987 to the present. (Cf. Doc. 5 at 2). Thus, he could have checked the status of his civil case himself or obtained a copy of the deed from Jordan or the Quitclaim Deed during periods when he was not incarcerated.

the evidence [if] she would get her kids to allege that
[Plaintiff] had illegal[ly] sexual[ly] touch[ed] them, so, the
secret indictments were made and show no date, year when the
crime was supposed to occurred, or no place, or how it occurred.
(Id. at 28).  According to Plaintiff, "[a] they had to do [was]
answer the leading questions by District Attorney Robert Keahey
(prosecutor) in the case[.]"   (Id.).  Plaintiff alleges that
because the information about the places, times, and the
incidents was conflicting, there was a secret indictment and a
rush to trial,  and "[t]hey conspired with Judge Harold L. Crow,
not to grant [Plaintiff] a continu[ance] to get a key witness
from Tennessee, [who] live[d] at Cotton's residen[ce] at the
time, all the alleged allegations[s] [were] suppose[d] to [have]
occurred." (Id. at 28).  He further contends that  "Keahey was
supposed to request a special prosecutor . . . , due to his
involvement with his Assistant District Attorney Michael
Onderdonk stealing and selling this stolen property, wh[ile] in
public office, to use the power invested in them to manipulate
the courts."  (Id. at 28-29).  Plaintiff asserts that the trial
was not fair, which was their intention, because, according
Plaintiff's lawyer, Jerry Turner, "juror Adriann Loper was the
second cousin to Michael Onderdonk's wife . . . and . . . Keahey
knew juror - Matt Gunter's father was arrested and convicted of

sexual abuse." (Id. at 29). Plaintiff alleges that these acts occurred because "they needed [Plaintiff] in prison for [the] rest of [his] life to cover up their proven crimes, of stealing and selling land, by us[ing] the legal system." (Id.).

Plaintiff alleges that Valerie Knapp, the former Circuit Court Clerk, states that before she became the Circuit Clerk, the civil case of Onderdonk v. Cotton had been removed from the Circuit Clerk's Office, and that the documents and all evidence related to it were "removed by Presiding Judge Gaines McCorquodale, Judge Robert Montgomery, now Judge Jerry Turner, and District Attorney Spencer Walker and Onderdonk from the public records." (Id.). Plaintiff also alleges that "[i]t could only be for one reason, got to be [the] intent to destroy the 'record,' as [though the] case has never been filed, since they finally got [him] illegally 'hid' in the state prison [for] 50 years, by malicious prosecution." (Id. at 22). Steve Grimes is alleged to have been the Clerk when this public record was removed. (Id.). Plaintiff claims that he has been denied his right to have a copy of the deeds and to have the Court's record in the civil case. (Id. at 21).

**B. Amended Complaint. (Doc. 5).**

In Plaintiff's Amended Complaint, he seeks to add as Defendants Sue Bell Cobb, retired Alabama Supreme Court Justice;

Mary Windom and J. Elizabeth Kellum, Judges of the Alabama Court of Criminal Appeals; Thomas M. Goggans, Plaintiff's former appellate attorney who allegedly committed conspiracy, filed a "no-merit brief," and slandered his name, which brought the sanctions; and Don P. Scurlock, III, who is a retired Circuit Court Judge.  (Doc. 5 at 2-3).  (Id. at 1).   In his Amended Complaint, Plaintiff reasserts many of the allegations detailed above, and claims that this action arises under 42 U.S.C. §§ 1983, 1985, and 1986; 18 U.S.C. §§ 1962-1965; 28 U.S.C. §§ 2201-2202;[7] and Rule 57 of the Federal Rules of Civil Procedure.[8] (Id. at 1).

In addition, Plaintiff alleges that in August, 1987, he was arrested on 10 misdemeanor charges that were bound over by Judge Scurlock, a special district court judge, in order to conflict

---

[7]  In enacting the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, "Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction," as the Act is procedural only.  Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S.Ct. 876, 879, 94 L.Ed.2d 1194 (1950); see GTE Directories Pub. Corp. v. Trimen America, Inc., 67 F.3d 1563, 1568 (11th Cir. 1995).  Thus, these sections do not serve as a jurisdictional basis for this action.

[8]  "The Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction."  Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 370, 98 S.Ct. 2396, 2400, 57 L.Ed.2d 274 (1978); see FED.R.CIV.P. 82; Diaz v. Sheppard, 85 F.3d 1502, 1504 n.3 (11th Cir), cert. denied, 520 U.S. 1162 (1997).  Therefore, Rule 57 does not provide a jurisdictional basis for this action.

14

with the civil case being tried on November 18, 1987. Id. at 3. Plaintiff contends this was done pursuant to a conspiracy involving "the judges, district attorneys, and Michael Onderdonk to misuse the court, to allow him to cut the timber and then to forge [Plaintiff's] signature and sell [Plaintiff's] land wh[ile][Plaintiff] was incarcerated. [It is not disputed that Plaintiff was], in the county jail, on December 16th 1988." (Id.). According to Plaintiff, the trial that was re-set for November 18, 1987 has been continued indefinitely. (Id.).

Plaintiff claims that he was convicted of first-degree sexual abuse on circumstantial evidence, and that Prosecutor Robert Keahey and defense counsel Jerry Turner "conspired to suppress exculpatory evidence of the Plaintiff's innocence, under the direction of Assistant District Attorney Michael Onderdonk[.]" (Id.).

Plaintiff contends that Sue Bell Cobb conspired with Onderdonk to commit fraud by misrepresenting facts in a memorandum opinion dated November 21, 2001, addressing a prior conviction, CC-81-044, and by denying Plaintiff his liberty on his fifth Rule 32 petition. (Id. at 4, 10 (Ex. C-1)). Plaintiff alleges that Cobb was a judge on his direct appeal, his first Rule 32 appeal, and another Rule 32 challenging his illegal sentences and that she was not going to correct her

15

intentional error in the opinion addressing his fifth Rule 32 petition. Plaintiff further asserts that there was no justification for her repeated disrespect for the law. (Id. at 4). Additionally, Plaintiff alleges that Cobb said that she would have "the Court correct the second claim 'error' of the cover up of the illegal sentences." (Id. & 13 (Ex. C-2)). And, at Draper Correctional Facility, on April 5, 2012, Plaintiff gave Cobb a copy of the memorandum opinion in CR-04-0785, addressing his ninth Rule 32 petition (id. at 15, Ex. C-2), which challenged his five 1996 first-degree sexual abuse convictions and his five, consecutive ten-year sentences, and asked Cobb, "[W]here did the judges on the Court of Appeals, get the authorization to only change the illegal 20's and 30's year sentences[.]" (Id. at 5, 13 (Ex. C-2 with reference to the 20- and 30-year terms)). He alleges that "Sue Bell said I [will] take this copy and get the court to correct this Court's error, which never happened, [be]cause of the conspiracy, she committed with Onderdonk." (Id. at 5).

Plaintiff contends that Judges Windom and Kellum committed conspiracy when they followed Plaintiff's retained appellate counsel Thomas Goggans' statement that Plaintiff's claim was procedurally barred and his reference in the brief to the Rule 32, the State's response, and the trial court order, and not

16

Plaintiff's uncounseled prior convictions.  (Id.).  Plaintiff maintains that "[c]ommon sense [would] tell you, [he] would not [have] paid out $3,300 if [Goggans] told [him], [he] would be procedural[ly] barred, and [Goggans] was not going to argue [his] illegal sentences[.]"  (Id.).  Plaintiff claims that Goggans "sold out, just like all those judges have[,]" and refers the Court to Goggans' response to Plaintiff's letter to the bar.  (Id. & 16-17 (Ex. D)).

Plaintiff also alleges that Judges Kellum and Windom have committed fraud and will not produce a copy of his Rule 32 petition showing where his claim – that an uncounseled felony conviction was used to enhance his sentences - was previously raised and addressed on the merits.  (Id. at 6, 18 (Ex. E); see Ex. E (opinion addressing claim raised in Plaintiff's twelfth Rule 32 petition)).  Plaintiff claims that he will put up $100,000 payable to the State of Alabama if Judges Kellum, Windom, or Joiner "can produce a trial court order showing any order except 'denied' or 'dismissed' on each Rule 32, raising this proven illegal sentence, by a[n] uncounseled prior conviction 'record.'"  (Id. at 6).  He claims that Judges Kellum and Windom have failed to perform their duties and have only conspired.  (Id. at 7).  He also complains that the appellate courts have treated his *ex mero motu* petition as a petition for

a writ of mandamus because they would have jurisdiction to correct the illegal sentences. (Id.).

Plaintiff concludes by stating that he "is not arguing his illegal sentences in this 42 U.S.C. § 1983, 1985, and 1986, . . .[but] only showing this Court, of how the misuse of power, under color of State law, by conspiracy, is used when donations or 'same' as 'pay-off,' are involved in covering up a crime, as proven here of stolen and s[a]l[e] of property in [P]laintiff's name . . . with a forged signature of [Plaintiff], by Assistant District Attorney Onderdonk . . . by all involved in this crime[.]" (Id. at 7). For relief, among other things, Plaintiff requests the Court to direct the FBI's Mobile Field Office to investigate Defendants for "civil rights" and "RICO" violations and for "the illegal use of power invested under color of law, and constitutional violations of due process and equal protection of the law, cause[d] [by] stolen land by the Assistant District Attorney." (Id. at 8).

## II.  Standards of Review Under 28 U.S.C. § 1915A

The Court is screening Plaintiff's Complaint (Doc. 1) and Amended Complaint (Doc. 5) under 28 U.S.C. § 1915A, which provides:

> (a) Screening.—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil

> action in which a prisoner seeks
> redress from a governmental entity or
> officer or employee of a governmental
> entity.
>
> (b) Grounds for dismissal.—On review, the
> court shall identify cognizable claims or
> dismiss the complaint, or any portion of the
> complaint, if the complaint—
>
> (1) is frivolous, malicious, or fails to
> state a claim upon which relief may be
> granted; or
> (2) seeks monetary relief from a defendant
> who is immune from such relief.

28 U.S.C. § 1915A(a)&(b).   This section provides a screening

mechanism for an action filed by a prisoner and does not

distinguish between a prisoner who pays the filing fee or one

who proceeds *in forma pauperis*.   Thompson v. Hicks, 213 F. App'x

939, 942 (11th Cir.),[9] cert. denied, 552 U.S. 994 (2007); Martin

v. Scott, 156 F.3d 578, 580 (5th Cir.), cert. denied, 527 U.S.

401 (1999).   Under § 1915A(a), "the district court immediately

ha[s] jurisdiction to review the complaint to decide whether it

was required to dismiss it[.]"   Cooper v. U.S. Dep't of

Treasury, DEA, 2006 WL 637817, at *2 n.2 (11th Cir. 2006)

(unpublished) (rejecting the prisoner's argument that the

district court lacked jurisdiction because he had not filed an

---

[9]  "Unpublished opinions are not considered binding
precedent, but they may be cited as persuasive
authority." 11th CIR. R. 36-2 (2005).

application to proceed *in forma pauperis*, which the local rule allowed and then provided for the action's dismissal if the application was not filed within thirty days).

Under 28 U.S.C. § 1915A(b)(1), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989).[10]  A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, id. at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist.  Id.

Section 1915A(b)(1) also provides that a complaint may be dismissed for failure to state a claim upon which relief may be granted.  Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997).  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content

---

[10]  Neitzke's interpretation of 28 U.S.C. § 1915(d) is applied to § 1915(d)'s superseding statutes, 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A.  Bilal v. Driver, 251 F.3d 1346, 1348–49 (11th Cir.) (§ 1915(e)(2)(B)), cert. denied, 534 U.S. 1044 (2001); Miller v. Donald, 541 F.3d 1091, 1100 (11th Cir. 2008) (§ 1915A); Gardner v. Riska, 444 F. App'x 353, at **2 (11th Cir. 2011) (unpublished) (§ 1915A).

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess [ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (second brackets in original).

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).  However, a court does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." GJR Investments v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds Randall v. Scott, 610 F.3d 701, 710 (11th Cir. 2010).  A court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. Iqbal, 556 U.S. at 681, 129 S.Ct. at 1951.  In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir.), cert. denied, 493 U.S.

21

863 (1989).

## III. Analysis.

Plaintiff states he wants the return of property stolen from him, 26 ½ acres, or monetary damages for the loss in addition to other damages. (Doc. 1 at 7). He also wants criminal charges brought against Defendants who were involved in the theft of property, where applicable, (id.), and wants an investigation by the Mobile Office of the FBI into "civil rights" and "RICO" violations and the illegal use of power under state law and constitutional violations caused by the stealing of land by Onderdonk. (Id. at 8). All the while, Plaintiff maintains that this action does not challenge his convictions and sentences; a point that the Court will later address. (Doc. 1 at 6; *see* Doc. 1 at 16).

### A. Plaintiff's Lack of Standing.

The Court's first consideration in addressing any action on its docket is to inquire into its jurisdiction. United States v. Denedo, 556 U.S. 904, 909, 129 S.Ct. 2213, 2219, 173 L.Ed.2d 1235 (2009). A federal court's jurisdiction is limited by the power that the Constitution and statutes grant it. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). "Because a federal court is powerless to act beyond its . . . grant of subject matter jurisdiction, a

22

court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001). This inquiry should be done at the earliest stage in the proceedings and *sua sponte* whenever subject matter jurisdiction may be lacking. University of S. Alabama v. American Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999). "[O]nce a court determines that there has been no [jurisdictional] grant that covers a particular case, the court's sole remaining act is to dismiss the case for lack of jurisdiction." Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1261 (11th Cir. 2000).

"[T]he Constitution's Article III require[s] that the jurisdiction of the federal courts be limited to actual cases and controversies." Elend v. Basham, 471 F.3d 1199, 1204-05 (11th Cir. 2006). Whether a party may be bring a case is governed by the standing doctrine, which requires a plaintiff "demonstrate injury in fact, causation, and redressability." Id. In order to suffer an injury in fact, there must be an invasion of a judicially recognized interest. Id. "The standing inquiry 'requires careful judicial examination of a complaint's allegations to ascertain whether the particular

23

plaintiff is entitled to an adjudication of the particular claims asserted.'"   Id. (quotations omitted).   It is the plaintiff's burden to establish each of the elements.   Id. at 1206.

To establish an injury in fact, there must be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."   Bochese v. Town of Ponce Inlet, 405 F.3d 964, 980 (11th Cir.), cert. denied, 546 U.S. 872 (2005).

In the present action, Plaintiff's allegations do not show that he has a legally protected interest in the 26 ½ acres that Jordan allegedly conveyed to him.   According to Plaintiff, Jordan's wife, from whom Jordan was separated, did not sign the deed; therefore it was placed "in a trust fund deed."   (Doc. at 21).   Plaintiff did not attach the deed allegedly prepared and executed by Jordan to the Complaint, which would have shown Plaintiff's ownership interest in this tract of property and that the deed itself complied with the necessary legal requirements.   See Smith v. Smith, 892 So.2d 384, 388 (Ala. Civ. App. 2003)(holding that to effectuate a transfer of real property in Alabama the deed must be attested by at least one witness); McIntosh v. Gauthier, 182 F. App'x 884, 886 (11th Cir. 2006) (finding standing was lacking due to the quitclaim deed

24

failing to satisfy legal requirements).  No mention was made in the Complaint of how Jordan and his wife held title to the land and whether the tract contained their homestead.  <u>Yeager v. Lucy</u>, 998 So.2d 460, 464 (Ala. 2008) (holding the deed conveying homestead property was not valid because it was not signed by the spouse); <u>Ex parte Arvest Bank</u>, 2016 WL 4943250 (Ala. Sept. 16, 2016) (finding the surviving wife received the husband's share in the property held as joint tenants with rights of survivorship).  Nor is it clearly shown that the deed was recorded.  <u>Key v. First Ala. Bank of Hartselle</u>, 466 So.2d 128 (Ala. 1985) (relying on Ala. Code § 35-4-90 and finding that the bank's judgment had priority over the conveyance of an unexecuted and unrecorded life estate).  Plaintiff does however mention that Onderdonk ran a title search and discovered that Plaintiff owned the land, but Plaintiff states that he has been trying to get a copy of the deed "since[] 1987[] when the case was not tried on November 18, 1987."  (Doc. 1 at 4, 15).  It appears, from Plaintiff's Complaint, that there have been periods of time during which he was not incarcerated and could have more easily obtained a copy of the deed at those times. (<u>Id.</u> at 28, 36).  This information raises the question whether there is a deed and what information the deed contains. Furthermore, Plaintiff gives no indication that he has paid the

taxes on the land.

Considering the lack of information concerning Plaintiff's ownership of the 26 ½ acres, Plaintiff has not plausibly shown that he is or was vested with an ownership interest in the 26 ½ acres. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; see Twombly, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (holding "[f]actual allegations must . . . raise [the] right to relief above the speculative level"). It is Plaintiff's "burden to demonstrate the existence of a legally cognizable interest and cannot count on the court to construct jurisdictional contentions for him." Nunnelee v. U.S., 972 F. Supp. 2d 1279, 1287 (N.D. Ala.), aff'd, 573 F. App'x 886, 887 (11th Cir. 2014) (unpublished) (holding the plaintiff lacked standing to sue because he "does not have a legally recognized possessory interest in the property in question"). Accordingly, Plaintiff's action is due to be dismissed without prejudice for lack of standing. Stalley v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction . . . [,] [which] is not a judgment on the merits and is entered without prejudice.").

26

**B. Alternate Bases for Dismissal.**

    **1. Application of <u>Heck v. Humphrey</u>.**

        **a.  Lack of Invalidation of Convictions and Sentences.**

Alternate bases for the dismissal of this action, or portions of it, exist, which the Court will discuss herein. Even though Plaintiff denies that he is challenging his convictions and sentences, his Complaint, as amended, is brimming over with allegations about his convictions and sentences.  He says that, but for the land that he owns, he would not be in prison on "illegal or void sentences."  (Doc. 1 at 6; *see* Doc. 1 at 16 (alleging that Goggans told Plaintiff that the reason he "could not get any justice on [his] illegal sentences, was because [he] owned some land, that they needed a deed to [it]")).  He alleges there is a conspiracy to keep him in prison "to cover up the forging of [his] signature, stealing and selling [his] land."  (<u>Id.</u> at 27).  Notwithstanding Plaintiff's stance that this action does not concern his convictions and sentences, the Court finds that this action has everything to do with his convictions and sentences.

The Court finds that the decision in <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.383 (1994), addresses Plaintiff's action.  The <u>Heck</u> Court held:

We hold that, in order to recover damages
for allegedly unconstitutional conviction or
imprisonment, or for other harm caused by
actions whose unlawfulness would render a
conviction or sentence invalid,(footnote
omitted) a § 1983 plaintiff must prove that
the conviction or sentence has been reversed
on direct appeal, expunged by executive
order, declared invalid by a state tribunal
authorized to make such determination, or
called into question by a federal court's
issuance of a writ of habeas corpus, 28
U.S.C. § 2254. A claim for damages bearing
that relationship to a conviction or
sentence that has not been so invalidated is
not cognizable under § 1983. Thus, when a
state prisoner seeks damages in a § 1983
suit, the district court must consider
whether a judgment in favor of the plaintiff
would necessarily imply the invalidity of
his conviction or sentence; if it would, the
complaint must be dismissed unless the
plaintiff can demonstrate that the
conviction or sentence has already been
invalidated. But if the district court
determines that the plaintiff's action, even
if successful, will not demonstrate the
invalidity of any outstanding criminal
judgment against the plaintiff, the action
should be allowed to proceed,(footnote
omitted) in the absence of some other bar
to the suit. (emphasis added)

Id. at 486-87, 114 S.Ct. at 487.  The decision in Heck denies

the existence of a cause of action to a prisoner, even one who

has even exhausted his state remedies, "until the conviction or

sentence is reversed, expunged, invalidated, or impugned by the

grant of a writ of habeas corpus."  Id. at 489, 114 S.Ct. at

2373.  The Court held, "[w]e think the hoary principle that

civil tort actions are not appropriate vehicles for challenging

28

the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." Id. at 485, 114 S.Ct. at 2372. On the other hand, the Court acknowledges that a § 1983 action could proceed if the action will not demonstrate the invalidity of a criminal judgment if successful, absent another bar. Id. at 487 & n.7, 114 S.Ct. at 2372-73 & n.7.

Before arriving at its decision, the Heck Court reviewed the decision of "Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), [which] considered the potential overlap between [habeas corpus and § 1983], and held that habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." Id. at 480, 114 S.Ct. at 2369. In other words, a request for release from incarceration or a speedier release can only be maintained in habeas action. Id.; Abella v. Rubino, 63 F.3d 1063, 1066 (11th Cir. 1995) ("Thus, declaratory or injunctive relief claims which are in the nature of habeas corpus claims—i.e., claims which challenge the validity of the claimant's conviction or sentence and seek

29

release—are simply not cognizable under § 1983.").

Moreover, with respect to a request for declaratory relief, the decision in Heck has been expanded to include a request for declaratory relief. Edwards v. Balisok, 520 U.S. 641, 648, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997). And the Heck decision is applied to RICO actions arising under 18 U.S.C. §§ 1962-65. Akers v. Bishop, 65 F. App'x 952, at **2 (6th Cir.), cert. denied, 540 U.S. 966 (2003); Stephenson v. Reno, 28 F.3d 26, 28 (5th Cir. 1994).

In reviewing Plaintiff's allegations, a wide-ranging conspiracy to maliciously prosecute him for sixteen or eighteen offenses is alleged to have existed since 1987, which allegedly involved people connected with Alabama's legal system, state officials and attorneys. (Doc. 1 at 22; Doc. 5 at 2-3). The apparent goal of the conspiracy is to keep Plaintiff incarcerated "to cover up the forging of [his] signature, stealing and selling [his] land." (Id. at 27). If the Court made a favorable ruling that a conspiracy existed to take Plaintiff's property and cover-up the forgery, which was carried out by prosecuting and incarcerating Plaintiff so he could not interfere with Onderdonk's acquisition of the property from the Jordan estate and the selling of the property, the Court would arguably be called upon to determine the validity of Plaintiff's

convictions and sentences.

Plaintiff, however, has not demonstrated that his convictions or sentences have been invalidated in a manner prescribed by Heck. [11]   Thus, the Court is precluded from addressing Plaintiff's action.   See Amaker v. Weiner, 179 F.3d 48, 52 (2d Cir. 1999) (applying Heck to §§ 1983, 1985, and 1986 claims as a ruling under these statutes would call into question the validity of the conviction); Acosta v. McNeil, 2013 WL 5770736, at *4 (N.D. Ala. 2013) (same); Norris v. Stark Cty., Ohio, 51 F.3d 272 (6th Cir. 1995) (unpublished) (affirming the dismissal of a RICO action pursuant to Heck); Harrison v. Grand Jurors, 2006 WL 354218, at *3 (N.D. Fla. 2006) (unpublished) (applying Heck to a RICO action).   Accordingly, Plaintiff's Heck-barred claims are due to be dismissed with prejudice as frivolous.   Abella, 63 F.3d at 1065 (affirming the dismissal of claims with prejudice).

---

[11] Plaintiff did not indicate on the Court's complaint form that his sexual abuse convictions and sentences have been invalidated (Doc. 1 at 6), and his four unsuccessful habeas actions in the Court show these convictions and sentences have not been invalidated in this Court. See Cotton v. Jones, CA No. 96-00683-BH-S (S.D. Ala. 1997) (unexhausted); Cotton v. Jones, CA No. 99-00374-CB-D (S.D. Ala. 2002) (procedural default or without merit); Cotton v. DeLoach, CA No. 06-00042-CB-M (successive); Cotton v. Daniels, CA No. 08-00555-WS-M (S.D. Ala. 2009) (successive).

### b. Non-<u>Heck</u> Barred Claims and Application of the Statute of Limitations.

In the event that a favorable ruling by the Court on a claim would not undermine Plaintiff's convictions or sentences, the statute of limitations would prevent a claim from proceeding. Early in the Complaint, Plaintiff offers a defense for the late filing of his Complaint. (Doc. 1 at 15 -18). He claims that through Defendants' actions, he has been prevented from obtaining a copy of the Quitclaim Deed until he hired someone to obtain a copy, which he received in March, 2016. (<u>Id.</u> at 16-17). He states that as a result, this action is filed well within the two-year statute of limitations for §§ 1983, 1985, and 1986 actions. (<u>Id.</u> at 17). Plaintiff's assertion is contrary to contents of a letter he wrote to this Court on December 29, 2014. In the letter, Plaintiff states that in May, 2014, he just located the deed in which his signature was forged in December, 1988. (<u>Id.</u> at 43 (Ex. A-4)).[12] Moreover, other allegations in the Complaint indicate that Plaintiff thought things were amiss when the case of <u>Onderdonk v. Cotton</u> was not tried in November, 1987. (Doc. 1 at 15). Nevertheless, the concrete statement in the letter to Court

---

[12] The Court notes, with interest, in <u>Battle v. Central State Hosp.</u>, 898 F.2d 126, 130 n.3 (11th Cir. 1990), the Eleventh Circuit held that "allegations that are contradicted by other allegations in the complaint may also constitute grounds for dismissal."

leaves no room for doubt that at the very latest, Plaintiff had notice of the allegedly forged Quitclaim Deed in May, 2014.

In Alabama, the statute of limitations for §§ 1983, 1985, and 1986 actions is two years. Lufkin v. McCallum, 956 F.2d 1104, 1106, 1108 (11th Cir.), cert. denied, 506 U.S. 917 (1992); ALA. CODE § 6-2-38(l); Muhammad v. Bethel, 430 F. App'x 750, at **1-2 (11th Cir. 2011)(applying Alabama's two-year statute of limitations to claims under 42 U.S.C. §§ 1983, 1985, and 1986). Even though state law determines the length of the limitations period, federal law governs when the statute of limitations begins to run, i.e., when the cause of action accrues. Wallace v. Kato, 549 U.S. 384, 388, 127 S.Ct. 1091, 1095, 166 L.Ed.2d 973 (2007). Under federal law, "'[accrual occurs] when the plaintiff has 'a complete and present cause of action'' . . . that is, 'when plaintiff can file suit and obtain relief.'" Id. (brackets in original)(citations omitted).

According to Plaintiff, he located the forged Quitclaim Deed in May, 2014. Previously, Goggans whom Plaintiff hired to represent him on the appeal of a Rule 32 petition, CA No. 13-1168, informed Plaintiff that Plaintiff could not get justice because he owned some land that "they" needed. (Id. at 16). Traveling under Plaintiff's conspiracy theory, Plaintiff's claim accrued in May, 2014, as that is when he knew about the

Quitclaim Deed and he was able to sue on the claims being brought in this action. Plaintiff, however, waited to file this action on or about September 19, 2016 (Doc. 1), which is more that two years from Plaintiff's discovery of the alleged forgery in May, 2014. Thus, those claims that would not undermine Plaintiff's convictions and sentences if the Court were to rule favorably on them occurred more than two years prior to the filing of Plaintiff's Complaint's on September 19, 2016. Thus, they are barred from proceeding by the two-year statute of limitations and are due to be dismissed for failure to state a claim upon which relief can be granted. Jones v. Bock, 549 U.S. 199, 215, 127 S.Ct. 910, 920-21, 166 L.Ed.2d 798 (2007); Rembert v. Florida, 572 F. App'x 908, 908-09 (11th Cir.)(unpublished), cert. denied, 135 S.Ct. 681 (2014).

### 2. Inappropriate Requests for Relief.

Included in Plaintiff's request for relief is his request for the return of the property. Specifically, he states: "I want my land back, or [to be] pa[id] for [the] land." (Doc. 1 at 7). Because Plaintiff indicates that his alleged injury, i.e., the deprivation of the land, can be undone through monetary damages, this request is not one for injunctive relief, Cunningham v. Adams, 808 F.2d 815, 821 (11th Cir. 1987), and is treated by the Court as a request for compensatory damages.

34

In addition, in Plaintiff's request for relief, he requests that Defendants be prosecuted, i.e., he "want[s] this Court to have criminal charges, w[h]ere deem[ed] appropriate on each defendant[,]" (Doc. 1 at 7), and wants Mobile's FBI Office to investigate Defendants for civil rights and RICO violations, (Doc. 5 at 8).   Such requests in this action are not appropriate, as "a private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another." Otero v. U. S. Att'y Gen., 832 F.2d 141, 141 (11th Cir. 1987) (affirming the dismissal of an action seeking the writ of mandamus to require the defendants to investigate and prosecute a former Florida State Attorney) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)); see United States v. Ballard, 779 F.2d 287, 295 (5th Cir.) ("A decision to prosecute is within the United States Attorney's substantial discretion . . . ."), cert. denied, 475 U.S. 1109 (1986).

### 3.  Conspiracy Allegations Fail to State a Claim.

In the event that Plaintiff would maintain that his claims are not Heck-barred or barred by the statute of limitations, an examination of his conspiracy allegations is warranted. Plaintiff's allegations of a conspiracy in the Complaint, as amended, concern many convictions and events involving many Defendants, over a considerable number of years, which are tied together with the vague and conclusory allegation of a conspiracy.

35

In order to state a conspiracy claim "a plaintiff must show among other things, that the defendants 'reached an understanding to violate his rights.'"  Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2002) (alteration and citation omitted).  This necessitates that a plaintiff provide more than a label or a conclusion.  Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; see Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) (finding that vague and conclusory conspiracy allegations are subject to dismissal).  An agreement to violate a plaintiff's constitutional rights must be shown, AFL-CIO v. City of Miami, Fla., 637 F.3d 1178, 1190-91 (11th Cir. 2011), with sufficient facts to suggest an agreement was made. Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.  In addition, an "underlying actual denial of his constitutional rights" must be shown.  Hadley v. Gutierrez, 526 F.3d 1324, 1332 (11th Cir. 2008).  "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequately to show illegality . . . . [the allegations] must be placed in the context that raises the suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action."  Twombly, 550 U.S. at 557, 127 S.Ct. at 1966.  The mere stringing together of events without a showing of contacts demonstrating that an understanding was reached is not

36

sufficient to establish a conspiracy. Harvey v. Harvey, 949 F.2d 1127, 1133 (11th Cir. 1992).

Plaintiff's allegations of a conspiracy are totally devoid of facts, i.e., the claim of a conspiracy expressed by him merely alleges that Defendants "conspired." There are no facts suggesting an agreement. Thus, Plaintiff's allegations do not indicate that a conspiracy is plausible. Accordingly, Plaintiff failed to state a conspiracy claim upon which relief can be granted, and such claim is due to be dismissed. Fullman, 739 F.2d at 556-56.[13]

### 4. Application of 42 U.S.C. § 1997e(e).

Another alternate basis on which to dismiss any compensatory and punitive damages sought by Plaintiff is 42 U.S.C. § 1997e(e), which provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e).

Section 1997e(e) was enacted by Congress "[i]n an effort to

---

[13] Relevant to the failure to state a conspiracy claim are the defenses of immunity and lack of state action, which are available to Defendants. These defenses are not being addressed due to the availability of the foregoing grounds for dismissal, although these additional defenses provide further reasons to dismiss this action.

stem the flood of prisoner lawsuits in federal court[.]"  Harris
v. Garner, 216 F.3d 970, 971 (11th Cir.), cert. denied, 532 U.S.
1065 (2001).  By enacting this section, Congress chose to
"preclude[] some actions for money damages[,]" Harris v. Garner,
190 F.3d 1279, 1283 (11th Cir. 1999), opinion vacated by 197
F.3d 1059, opinion reinstated in part by 216 F.3d 970 (11th Cir.
2000), and "to enforce prisoners' constitutional rights through
suits for declaratory and injunctive relief[,]" id. at 1289, and
nominal damages.  Brooks v. Warden, 800 F.3d 1295, 1307-09 (11th
Cir. 2015).

Section 1997e(e) applies "only to lawsuits involving (1)
Federal civil actions (2) brought by a prisoner (3) for mental
or emotional injury (4) suffered while in custody." Napier v.
Preslicka, 314 F.3d 528, 532 (11th Cir.), cert. denied, 540 U.S.
1112 (2004).  No distinction is made between "constitutional
claims frequently accompanied by physical injury (e.g., Eighth
Amendment violations) and those rarely accompanied by physical
injury (e.g., First Amendment violations)." Al-Amin v. Smith,
637 F.3d 1192, 1197 (11th Cir. 2011) (holding all constitutional
claims are treated equally).  Nor does the mental or emotional
injury need to be pled in order for the statute to be
applicable.  Id. at 1197 & n.5 (holding otherwise a prisoner's
pleading or not pleading of mental or emotional injury would

achieve talismanic importance and lead to illogical results).
Thus, in order to avoid dismissal under § 1997e(e), a prisoner's
claim "must be accompanied by allegations of physical injuries
that are greater than *de minimis*." Mitchell v. Brown &
Williamson Tobacco Corp., 294 F.3d 1309, 1312–13 (11th Cir.
2002).

In the present action, Plaintiff requests compensation for
the land allegedly stolen, "damages this Court deem[s]
appropriate, and any other damage[s the] Court deem[s]
appropriate for [Defendants'] illegal use of power, under color
of state law." (Doc. 1 at 7). Plaintiff has not identified any
physical injury, much less one that is greater than *de minimis*,
in this action. Plus, in order for a compensatory or punitive
damages claim to proceed, Plaintiff must have demonstrated that
he suffered a physical injury that was greater than *de minimis*.
Id. at 1313.

Examining the requested relief in the *ad damnum* clause, the
request to be compensated for the land is a request for
compensatory damages. (Doc. 1 at 7). However, the vaguely
worded damages requests - what the Court "deems appropriate" -
must be liberally construed, as other courts have done, and have
found such requests to be for nominal damages. (See Doc. 1 at
7); Boxer X v. Donald, 169 F. App'x 555, 559 (11th Cir. 2006)

(unpublished) ("We conclude that Boxer did seek nominal damages
when his complaint requested compensatory damages and 'any other
relief the court deem[s] appropriate.'").  A claim for nominal
damages may proceed "if the plaintiff can show a violation of a
fundamental constitutional right, even if he cannot prove actual
injury," Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003),
but if the claim were successful, the amount to be awarded would
be only nominal.  See Carey v. Piphus, 435 U.S. 247, 266-67, 98
S.Ct. 1042, 1053-54, 55 L.Ed.2d 252 (1978) (holding nominal
damages should not exceed one dollar); Kyle v. Patterson, 196
F.3d 695, 697 (7th Cir. 1999) (finding that $1 is the norm for
nominal damages); cf. Harrison v. Myers, 2011 WL 3204372, at *7
(S.D. Ala. 2011) (unpublished) (finding that the prisoner's
request of $2,500 was not for nominal damages inasmuch as
nominal damages implies a mere token or trifling); In re Bayside
Prison Litigation, 2010 WL 4916716, at *4 (D.N.J. Nov. 23, 2010)
(unpublished) (finding that "$2,000.00 surely surpasses the
limit of what constitutes a 'minimal' amount of compensation by
any definition of the term 'nominal'").  Thus, if there was a
violation of the Constitution, a claim for nominal damages could
proceed in this action, if it would not be barred for some other
reason, such as immunity, statute of limitations, etc.

Notwithstanding nominal damages, § 1997e(e) would be an

alternate basis for the dismissal of Plaintiff's claims for compensatory damages as well as any claims for punitive damages. See Michtavi v. U.S., 345 F. App'x 727, 729 (3d Cir. 2009) (affirming the dismissal of a RICO action under 42 U.S.C. § 1997e(e)).

## IV. Conclusion.

Based upon the foregoing reasons, it is recommended that this action be dismissed without prejudice for lack of standing, or in the alternative, that the Heck-barred claims be dismissed with prejudice as frivolous pursuant to 28 U.S.C. § 1915A(b)(1) and that the remainder of the claims be dismissed without prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A(b)(1).

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. Gen.LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in

accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this **10**$^{th}$ day of **November, 2016.**

                           **/s/ SONJA F. BIVINS**
                     **UNITED STATES MAGISTRATE JUDGE**